UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| GRANITE RE, INC., a Oklahoma corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TOWN OF CHANCELLOR,<br><br>Defendant. | CIV. 18 - 4004<br><br>**TOWN OF CHANCELLOR'S MEMORANDUM IN OPPOSITION TO GRANITE RE, INC.'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Town of Chancellor ("Chancellor"), by and through its counsel of record, submits the following as its Memorandum in Opposition to Granite Re, Inc.'s Motion for Summary Judgment.

**INTRODUCTION**

Plaintiff Granite Re, Inc. ("Granite Re") is not entitled to summary judgment. It is undisputed that the work on the project was substantially completed 82 days after the substantial completion deadline. Granite Re is contractually obligated to pay liquidated damages to Chancellor for that delay under the plain language of the Performance Bond, Construction Contract, and Takeover Agreement. Thus, Granite Re is not entitled to judgment as a matter of law with respect to Chancellor's counterclaim for liquidated damages.

Granite Re has also failed to establish that it is entitled to judgment as a matter of law on its breach of contract and subrogation claims against Chancellor. Granite Re has materially breached the Takeover Agreement, Performance Bond, and Construction Contract by failing to complete warranty work to correct defective work on the project. Granite Re has also materially breached the Performance Bond by failing to pay Chancellor for additional legal costs and professional design costs and liquidated damages. Chancellor contends that the amount Granite

1

Re owes to Chancellor for its breaches of the Takeover Agreement, Performance Bond, and Construction Contract *exceeds* the amount Granite Re claims to be owed. Granite Re disputes those amounts. Those factual disputes and the doctrine of offset defeat Granite Re's motion for summary judgment.

## BACKGROUND

Chancellor entered into a construction contract with Schenk Industries, LLC ("Schenk"), effective February 24, 2015, to complete *Engineer Project No. 0614 – Wastewater Collection Improvements* in exchange for $733,641.48 (hereinafter the "Construction Contract"). *See* Complaint ¶ 6; Answer ¶ 5; McManaman Aff., ¶ 2 and Ex. 1. Granite Re issued a Payment Bond and a Performance Bond, each in the sum of $733,641.48, as Schenk's surety for the Construction Contract. *See* Complaint ¶ 7; Answer ¶ 3; Gregerson Aff. ¶ 4, Ex. 2-3 (DOC 24-2 and 24-3); McManaman Aff. ¶ 3.

Schenk ceased work on the Construction Contract on or about September 1, 2015. *See* Complaint ¶ 8; Answer ¶ 3; McManaman Aff. ¶ 4. Schenk abandoned the project without completing the work it was obligated to perform under the Construction Contract. *See* McManaman Aff., ¶ 4. In a written notice dated September 28, 2015, Chancellor declared Schenk in default of its obligations under the Construction Contract and formally terminated Schenk's right to complete the Construction Contract. *See* Complaint ¶ 9; Answer ¶ 6; McManaman Aff. ¶ 5.

Pursuant to Paragraph 4.2 of the Performance Bond, Granite Re entered into a Takeover Agreement with Chancellor on October 9, 2015, to complete the Construction Contract. *See* Complaint ¶ 13; Answer ¶ 3; Gregerson Aff., ¶7, Ex. 4 (DOC 24-4); McManaman Aff. ¶ 6. The Work except for asphalt surfacing was substantially completed by Granite Re and its independent

contractor on November 25, 2015, which was 82 days *after* the substantial completion deadline of September 4, 2015 in the Construction Contract. *See* McManaman Aff., ¶ 7 and Ex. 1.

Pursuant to the terms of the Performance Bond, Construction Contract, and Takeover Agreement, Granite Re owes Chancellor liquidated damages in the amount of $59,450 for the failure to complete the project on time (82 days x $725.00 per day). *See* McManaman Aff., ¶ 8 and Ex. 1; Gregerson Aff., Ex. 3-4 (DOC 24-3 and 24-4). Granite Re has refused to pay Chancellor liquidated damages in material breach of the Performance Bond, Construction Contract, and Takeover Agreement. *See* McManaman Aff., ¶ 9 and Ex. 1; Gregerson Aff., Ex. 3-4 (DOC 24-3 and 24-4).

Pursuant to the Performance Bond, Granite Re agreed to pay Chancellor for its additional legal costs and design professional costs incurred as a result of Schenk's default under the Construction Contract. *See* Gregerson Aff., Ex. 3-4 (DOC 24-3 and 24-4). Chancellor incurred additional legal costs in the amount of $11,600 (which amount continues to increase and accrue herein) resulting from Schenk's default. *See* McManaman Aff., ¶ 10. Chancellor also incurred additional design professional costs in the amount of $79,362.64 resulting from Schenk's default. *See* McManaman Aff., ¶ 12. Granite Re has refused to pay Chancellor for the additional legal costs and design professional costs it incurred resulting from Schenk's default in material breach of the Performance Bond. *See* McManaman Aff., ¶¶ 11 and 13 and Ex. 1; Gregerson Aff., Ex. 3-4 (DOC 24-3 and 24-4).

Chancellor discovered defective work on the project within one year after the date of substantial completion, and advised Granite Re of said defective work. *See* McManman Aff., ¶ 14. That warranty work includes the following:

- o Overlay and chip seal asphalt surface on Third Street as required by Turner County Highway Department;

- - o Repair sag in sewer at the following locations:
      - Between MH#9 and MH#10 – 95' to 185' from MH#9
      - Between MH#10 and MH#11 – 80' to 115' and 160' to 195' from MH#11
      - Between MH#11 and MH#12 – 45' to 95' and 255' to 335' from MH#11
  - o Remove and replace smashed and dented sewer between MH#9 and MH#10 – 120' to 135' from MH#9
  - o Clean and video sewer from lift station to MH#12

*See* McManaman Aff., ¶ 15.  Some of the defective work violates the applicable building code and standards.  *Id.*  Granite Re has refused to correct the defective work in material breach of the Takeover Agreement, Performance Bond, and Construction Contract.  *See* McManaman Aff., ¶ 16 and Ex. 1; Gregerson Aff., Ex. 3-4 (DOC 24-3 and 24-4).  Chancellor has not publicly bid the cost to complete the warranty work, as would be required under SDCL ch. 5-18A in the event Granite Re does not fulfill its contractual obligation to correct the defective work. *See* McManaman Aff., ¶ 17.  Chancellor has been informally advised by two contractors that the estimated cost to complete the warranty work would be between $140,000 to $180,000. *See* McManaman Aff., ¶ 18.

## STANDARD OF REVIEW

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). All facts and the inferences that may reasonably be drawn from those facts must be viewed in the light most favorable to the non-moving party. *Estate of Barnwell by and through Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018).

## ARGUMENT AND AUTHORITIES

I. **Granite Re is contractually liable for Chancellor's Liquidated Damages under the plain language of the Construction Contract, Performance Bond and Takeover Agreement.**

It is undisputed that the work (except for asphalt surfacing) was substantially completed on November 25, 2015, which was 82 days *after* the substantial completion deadline provided

4

for in the Construction Contract. The plain language of the Construction Contract, Performance Bond and Takeover Agreement establishes that Granite Re is contractually obligated to pay liquidated damages to Chancellor for the damages it sustained as a result of that delay.

### *The Construction Contract*

Paragraph 4 of the Construction Contract provides:

4.01 *Time of the Essence*
A. All time limits for Milestones, if any, Substantial Completion, and completion and readiness for final payment as stated in the Contract Documents are of the essence of the Contract.

4.02 *Dates for Substantial Completion and Final Payment*

A. The Work except for asphalt surfacing will be substantially completed within 70 calendar days after the date when the Contract Times commence to run as provided in Paragraph 2.03 of the General Conditions and on or before September 4, 2015.

B. The asphalt surfacing portion of the Work may begin in the spring of 2016 and will be substantially completed on or before June 12, 2016.

4.03 *Liquidated Damages*

A. **Contractor and Owner recognize that time is of the essence as stated in Paragraph 4.01 above and that Owner will suffer financial loss if the Work is not completed within the times specified in Paragraph 4.02 above**, plus any extensions thereof allowed in accordance with Article 12 of the General Conditions. **The parties also recognize the delays, expense, and difficulties involved in proving in a legal or arbitration proceeding the actual loss suffered by Owner if the Work is not completed on time. Accordingly, instead of requiring any such proof, Owner and Contractor agree that as liquidated damages for delay (but not as a penalty),** Contractor shall pay Owner for each day that expires after the time specified in Paragraph 4.02 above for Substantial Completion until the Work is substantially complete. **Payments shall be $725 and $500 for each day that expires after the time specified in Paragraph 4.02A and 4.02B respectively.**

*See* McManaman Aff., Ex. 1 (emphasis added).

The plain language of the Construction Contract unequivocally provides that Chancellor is entitled to liquidated damages for delay in the event that the work was not substantially completed by the deadlines provided therein. Importantly, in paragraph 4.03, the parties

expressly recognized that the actual damages to Chancellor for a delay in performance would be extremely difficult to ascertain and prove. Consequently, the liquidated damages provision in the Construction Contract fixing damages for delay in performance on a daily basis of $725 per day for a project exceeding $733,000 is one for liquidated damages, and not a void penalty, and thus, is enforceable under well-established South Dakota law. *See e.g. Dave Gustafson & Co. v. State*, 156 N.W.2d 185 (SD 1968) (holding that provision in state highway construction contract fixing damage for delay in performance on daily basis of $210 for project totaling $530,742.14 was one for liquidated damages and was enforceable); *Walter Motor Truck Co. v. State By and Through Dept. of Transp.*, 292 N.W.2d 321 (SD 1980) (holding that challenged contract provision in contract to supply fire trucks, which provided that if contractor failed to deliver, it shall be assessed liquidated damages of $50 per calendar day per truck for each calendar day beyond stipulated delivery day, was a valid expression of liquidated damages, rather than void penalty, where, at time contract was made, damages in event of breach were incapable or very difficult of accurate estimation, parties endeavored to fix fair compensation and stipulated damages were not so disproportionate to amount of any damage reasonably to have been contemplated when contract was executed as to be oppressive).

The Construction Contract also expressly provides that "[w]here Contractor's services have been … terminated by Owner, **the termination will not affect any rights or remedies of Owner against Contractor then existing or which may thereafter accrue."** *See* McManaman Aff., Ex. 1 (General Conditions, ¶ 15.02E) (emphasis added). Thus, the parties contractually agreed that if Schenk was terminated, Chancellor would still be entitled to recover liquidated damages then existing and which accrued thereafter.

The Construction Contract also fully incorporates the Performance Bond.  *See* McManaman Aff., Ex. 1 (Paragraph 9.01A).

### *The Performance Bond*

Paragraph 1 of the Performance Bond provides:

> 1. CONTRACTOR and Surety, jointly and severally, bind themselves their heirs, executors, administrators, successors and assigns to the Owner **for the performance of the Contract, which is incorporated herein by reference**[.][1]

Gregerson Aff., Ex. 3 (DOC 24-3).  This provision makes clear that Granite Re is obligated to Chancellor for the performance of the Construction Contract, which is fully incorporated into the Performance Bond.

Paragraph 3 of the Performance Bond provides:

> 3.  If there is no OWNER Default, **Surety's obligation under this Bond Shall arise after**
>> 3.1  OWNER has notified CONTRACTOR and Surety at the address described in Paragraph 10 below, that Owner is considering declaring a CONTRACTOR Default and has requested and attempted to arrange a conference with CONTRACTOR and Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Contract.  If OWNER, CONTRACTOR and Surety agree, CONTRACTOR shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a CONTRACTOR Default; and
>> 3.2  **The OWNER has declared a CONTRACTOR Default and formally terminated CONTRACTOR'S right to complete the contract**.  Such CONTRACTOR Default shall not be declared earlier than twenty days after CONTRACTOR and Surety have received notice as provided in paragraph 3.1; and
>> 3.3 The owner has agreed to pay the Balance of the Contract Price to:
>>> 1. The Surety in accordance with the terms of the Contract:

---

[1] The Performance Bond provides the following definitions:

> 12.2 Contract: The agreement between Owner and Contractor identified on the signature page, including all Contract Documents and changes thereto.
> 12.3 Contractor Default: Failure of Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract.

*See* Gregerson Aff. Ex. 3 (DOC 24-3).

7

> 2. Another contractor selected pursuant to paragraph 4.3 to perform the contract.

*Id.* (emphasis added). This provision makes clear that all of Granite Re's obligations under the Performance Bond arise *after* Schenk's right to complete the Construction Contract had been formally terminated by Chancellor.

> Paragraph 4 of the Performance Bond provides:
>
> 4. When Owner has satisfied the conditions of Paragraph 3, Surety shall promptly and at the Surety's expense take one of the following actions:
>> 4.1  Arrange for Contractor, with consent of Owner, to perform and Complete the Contract, or
>> 4.2  Undertake to perform and complete the Contract itself, through its agents or through independent contractors; or
>> 4.3  Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by Owner and the contractor selected with Owner's concurrence to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by Owner resulting from the Contractor default; or
>> 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances;
>>> 1. After investigation, determine the amount for which it may be liable to Owner and as soon as practicable after the amount is determined, render payment therefor to Owner, or
>>> 2. Deny liability in whole or in part and notify the Owner citing reasons thereof.

*Id.* Paragraph 6 of the Performance Bond goes on to provide:

> **After Owner has terminated Contractor's right to complete the Contract,** and if Surety elects to act under paragraph 4.1, 4.2 or 4.3 above, then the responsibilities of Surety to Owner Shall not be greater than those of the Contractor under the Contract, and the responsibilities of Owner to Surety shall not be Greater than those of Owner under the Contract.  To a Limit of the amount of this Bond, but subject to commitment by Owner Of the Balance of the Contract Price to mitigation of costs and damages On the Contract, **the Surety is obligated without duplication For:…**

> 6.3 **Liquidated damages,** or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or nonperformance of Contractor.

*Id.* (emphasis added).

These provisions make crystal clear that Granite Re contractually agreed to perform the Construction Contract and pay liquidated damages to Chancellor for delayed performance or nonperformance of the Construction Contract *after* Chancellor terminated Schenk's right to complete the Construction Contract.

### *The Takeover Agreement*

In paragraph 3 of the Takeover Agreement, Granite Re agreed to "perform or cause to be performed all the work required by the [Construction] Contract and complete or cause to be completed the [Construction] Contract in accordance with **and subject to its terms and conditions.**" *See* Gregerson Aff., Ex. 4 (DOC 24-4) (emphasis added). In paragraph 6, the parties also "expressly agree that neither party is waiving any rights, claims, defenses or causes of action, and nothing contained in this Agreement shall be deemed a waiver of such in whole or in part." *Id.*

Thus, it is clear that Chancellor did not waive its right to liquidated damages by entering into the Takeover Agreement, and that Granite Re agreed to complete the Construction Contract in accordance with and subject to the terms and conditions of the Construction Contract (which includes the liquidated damages provision). Thus, Granite Re remains liable to pay liquidated damages under the plain language of the Takeover Agreement as well.

### *Granite Re Contractually Agreed to Pay Liquidated Damages After Schenk was Terminated*

South Dakota's Constitution recognizes the inherent right to "freedom of contract." South Dakota Const., Art 6, §§ 1, 2; *State v. Nuss*, 114 N.W.2d 633 (SD 1962). Indeed, contract

9

law is based on the principle of freedom of contract which protects the justifiable expectations of parties to an agreement, free from governmental interference. *Eder v. Lake Geneva Raceway, Inc.*, 523 N.W.2d 429 (Wis. Ct. App. 1994). It has been well said, "that the right of private contract is no small part of the liberty of the citizen, and that **the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare.**" *Bartron v. Codington County*, 2 N.W.2d 337 (SD 1942) (emphasis added).

In the Performance Bond that Granite Re drafted, Granite Re contractually agreed to perform the Construction Contract and pay Chancellor its liquidated damages under the Construction Contract *after* Chancellor terminated Schenk's right to complete the Contract. This Court is required to maintain and enforce the Performance Bond, and should not allow Granite Re to escape from its contractual obligation. Granite Re's contractual agreement to pay Chancellor's liquidated damages *after* Schenk was terminated does not contravene any public right or public policy.

Chancellor acknowledges the holding of the South Dakota Supreme Court in *Subsurfco, Inc. v. B-Y Water Dist.*, 337 N.W.2d 448, 457-58 (SD 1983). However, that case does not support Granite Re's argument that it should be excused from its contractual obligations under the Performance Bond. In *Subsurfco*, there is absolutely no indication that the surety or the contractor in that case had contractually agreed to pay liquidated damages that accrued *after* the contractor was terminated. Here, the Construction Contract expressly provides that "**the termination will not affect any rights or remedies of Owner against Contractor then existing or which may thereafter accrue**," and the Performance Bond makes abundantly clear

10

that Granite Re agreed to pay liquidated damages *after* the termination.  *Supra.*  Therefore, *Subsurfco* is easily distinguishable.

More importantly, *Subsurfco* does not set forth any public policy reason that would justify interfering with these parties' freedom to contract.  Indeed, Granite Re has not identified a single public policy reason that would warrant a determination that the plain language of the Performance Bond that was drafted by Granite Re should not be enforced.   Notably, there is no public policy that would preclude parties from contracting for additional rights that would not otherwise exist under the law.  Indeed, contracts routinely provide additional rights that would not otherwise be available in statutory schemes or under the common law. [2]  These parties had the constitutional right to enter into a contract that allows for the payment of liquidated damages *after* the termination of the contractor.  There is no public policy that is contravened by that agreement.

Notably, the enforcement of the Performance Bond as written will not result in a double recovery for Chancellor, and will simply place Chancellor in the position it would have been in had there been no delay or breach.   That is the very purpose of having a performance bond.  The liquidated damages will merely compensate Chancellor for damages it sustained as a result of the delay.  If this Court were to excuse Granite Re's obligation to pay liquidated damages, Chancellor would not recover anything for the significant damages it incurred as a result of the delay. That would be an unjust result here.   The substantial completion deadline for the work (except for asphalt surfacing) was September 4, 2015.  It is undisputed that Schenk ceased work

---

[2] For example, SDCL 32-35-70 provides that insurance policies may exclude or limit coverage for a relative residing in the named insured's household.  Yet, insurance companies and insured's routinely contract for an insurance policy that provides coverage for injury to relatives residing in the named insured's household.  For another example, parties routinely agree to express warranty terms that exceed the implied warranty rights granted under state law.

on or about September 1, 2015 and abandoned the project, and that Chancellor terminated Schenk on September 28, 2015.  The work (except for asphalt surfacing) was not substantially completed until November 25, 2015, which was **82 days after the substantial completion deadline**.  The position urged by Granite Re would force Chancellor to choose between (1) terminating Schenk so that the project can be finished, but foregoing any recovery for the delay, or (2) waiting for Schenk, who had completely abandoned the job for several weeks, to eventually come back and finish the project in order to preserve its ability recover delay damages.  Such a result would defeat the very purpose of contract damages, which is to put the injured party in the same position it would have been had there been no breach.  *Lamar Advertising of South Dakota, Inc. v. Heavy Constructors, Inc.*, 2008 SD 10, ¶ 14, 745 N.W.2d 371, 376.

To be frank, Granite Re's position is completely disingenuous.  Granite Re specifically agreed that *after* Schenk was terminated, Granite Re would be obligated to complete the project *and* pay liquidated damages for any delay.  Enforcing the Performance Bond as written by Granite Re will merely place Chancellor in the position it would have been in had there been no delay or breach.  Chancellor is entitled to the benefit of the bargain under the Construction Contract and Performance Bond. Granite Re should not be permitted to play "gotcha" by specifically agreeing to pay liquidated damages after Schenk was terminated, and then do an about-face after the fact and now claim that Granite Re is not obligated to pay liquidated damages because Chancellor terminated Schenk.   Such a result would be absurd.

In sum, Granite Re contractually agreed to pay liquidated damages to Chancellor *after* Schenk was terminated.  There is simply no public policy reason that would justify allowing Granite Re to escape its contractual obligation to pay Chancellor liquidated damages under the

Performance Bond that it drafted.  A contrary result would unconstitutionally interfere with the parties' right to freedom of contract, and would result in Chancellor receiving no compensation for the damages it suffered as a result of the project not being completed on time. Chancellor is entitled to liquidated damages under the plain language of the Performance Bond and Construction Contract, and thus, Granite Re has failed to establish that it is entitled to judgment in its favor on Chancellor's counterclaim as a matter of law. Granite Re's motion for summary judgment with respect to Chancellor's counterclaim for liquidated damages must, therefore, be dismissed.

    **II.**    **Granite Re is not entitled to summary judgment with respect to its breach of contract and subrogation claims.**

Granite Re's motion for summary judgment completely ignores its own material breaches of the Takeover Agreement, the Performance Bond, and the Construction Contract, the plain language of the Takeover Agreement, Performance Bond, and Construction Contract, and the factual disputes over the amounts that the parties owe to each other under those same agreements that gave rise to this lawsuit in the first place.

    *A. Granite Re is in material breach of the Takeover Agreement and Performance Bond because it has failed to complete warranty work to correct defective work.*

In paragraph 3 of the Takeover Agreement, Granite Re specifically agreed to "**perform or cause to be performed all the work required by the Contract and complete or cause to be completed the [Construction] Contract [between Schenk and Chancellor] in accordance with and subject to its terms and conditions.**" *See* Gregerson Affidavit, Ex. 4 (DOC 24-4).  (emphasis added).  Likewise, the Performance Bond provides, in pertinent part:

> 1. CONTRACTOR and Surety, jointly and severally, bind themselves their heirs, executors, administrators, successors and assigns to the Owner **for the performance of the Contract, which is incorporated herein by reference**[.][3]
>
> 6. After Owner has terminated Contractor's right to complete the Contract, and if Surety elects to act under paragraph 4.1, 4.2 or 4.3 above, then the responsibilities of Surety to Owner Shall not be greater than those of the Contractor under the Contract, and the responsibilities of Owner to Surety shall not be Greater than those of Owner under the Contract.  To a Limit of the amount of this Bond, but subject to commitment by Owner Of the Balance of the Contract Price to mitigation of costs and damages On the Contract, the Surety is obligated without duplication For:
>    6.1 **The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract**.

*See* Gregerson Affidavit, Ex. 3 (DOC 24-3) (emphasis added).

Paragraph 13.07 of the Construction Contract General Conditions provides, in pertinent part:

> 13.07  *Correction Period*
>
> If within one year after the date of Substantial Completion …any Work is found to be defective, or if the repair of any damages to the land or areas made available for Contractor's use by Owner or permitted by Laws and Regulations as contemplated in Paragraph 6.11.A is found to be defective, Contractor shall promptly, without cost to Owner and in accordance with Owner's written instructions:
> 1. repair such defective land or areas; or
> 2. correct such defective Work; or
> 3. if the defective Work has been rejected by Owner, remove it from the Project an replace it with Work that is not defective, and
> 4. satisfactorily correct or repair or remove and replace any damage to other Work, to the work of others or other land or areas resulting therefrom.

---

[3] The Performance Bond provides the following definitions:

> 12.2 Contract: The agreement between Owner and Contractor identified on the signature page, including all Contract Documents and changes thereto.
> 12.3 Contractor Default: Failure of Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract.

*See* Gregerson Aff. Ex. 3 (DOC 24-3).

Thus, Granite Re is contractually obligated to correct any defective work that was found within one year after the date of substantial completion under the plain language of the Takeover Agreement and Performance Bond.

It is undisputed that work was found to be defective within one year after the date of substantial completion, and that Granite Re was advised of the same. *See* McManaman Aff., ¶ 14. It is also undisputed that the warranty work remains uncompleted to correct Schenk's defective work on the project. *See* McManaman Aff., ¶ 16. That warranty work includes the following:

- Overlay and chip seal asphalt surface on Third Street as required by Turner County Highway Department;
- Repair sag in sewer at the following locations:
    - Between MH#9 and MH#10 – 95' to 185' from MH#9
    - Between MH#10 and MH#11 – 80' to 115' and 160' to 195' from MH#11
    - Between MH#11 and MH#12 – 45' to 95' and 255' to 335' from MH#11
- Remove and replace smashed and dented sewer between MH#9 and MH#10 – 120' to 135' from MH#9
- Clean and video sewer from lift station to MH#12

*See* McManaman Aff., ¶ 15. Some of the defective work violates the applicable building codes and standards. *Id.*

Granite Re is obligated to correct the defective work under the plain terms of the Takeover Agreement and the Construction Contract it agreed to perform therein. Granite Re is also obligated to correct the defective work under the plain terms of the Performance Bond and the Construction Contract it agreed to perform therein. Yet, Granite Re has refused to correct the defective work in direct breach of the plain terms of the Takeover Agreement, Construction Contract, and Performance Bond. *See* McManaman Aff., ¶ 16. Because Granite Re is in material breach of the Takeover Agreement, Construction Contract and Performance Bond, it is

not entitled to summary judgment with respect its claims against Chancellor under the Takeover Agreement.

Granite Re has attempted to thwart its contractual obligation to correct the defective work by sending Chancellor a check for $70,400 (which amount is based on a mere estimate that an engineer provided for what the warranty work might cost). Chancellor has rejected that check because it does not satisfy Granite Re's contractual obligation to perform and complete all of the work required by the Construction Contract and to correct the defective work as required by the plain language of the Takeover Agreement and Performance Bond. Chancellor should not be required to hire a third contractor to come in and correct the defective work on the project, as Granite Re contends herein, because Granite Re contractually agreed to complete the Construction Contract and correct any defective work in both the Takeover Agreement and the Performance Bond. Such a result would be absurd, particularly when taking into consideration that Chancellor would be required to incur significant time and expense to publicly bid the warranty work under the provisions of SDCL ch. 5-18A. No formal bid has ever been received for the warranty work, so the actual amount it might cost to complete the warranty work is currently unknown. However, two contractors have informally advised Chancellor that the estimated cost to complete the warranty work might be between $140,000 to $180,000. *See* McManaman Aff., ¶ 18. Therefore, Granite Re's attempted tender of a check for $70,400 does not satisfy its contractual obligation to perform all of the work required by the Construction Contract, which expressly includes warranty work to correct defects discovered within one year of substantial completion, and to correct the defective work and complete the Construction Contract. Granite Re has not fulfilled its contractual obligations Chancellor. Thus, Granite Re's

own material breach of the Takeover Agreement and Performance Bond preclude the entry of summary judgment in its favor.

### B. Factual disputes over the amount Granite Re owes to Chancellor, if anything, preclude summary judgment.

The Takeover Agreement provides, in pertinent part:

4. The Owner has tendered completion of the Project to the Surety. …The Surety will undertake the completion of the Project in accordance with the terms of the Contract pursuant to paragraph 4.2 of the performance bond, provided the entire unpaid Contract balance, including retaining and monies owed for work heretofore done by the Principal for which payment has not been made by the Owner is paid to the Surety **pursuant to the performance bond and certain other agreements hereinafter set out are made with the Owner**[.]

…

6. The parties expressly agree that neither party is waiving any rights, claims, defenses or causes of action, and nothing contained in this Agreement shall be deemed a waiver of such in whole or in part.

*See* Gregerson Aff., Ex. 4 (DOC 24-4). This makes clear that Chancellor's obligation to pay Granite Re under the Takeover Agreement is pursuant to the terms of the Performance Bond, which incorporates the Construction Contract.

Under the Performance Bond, Granite Re agreed that:

6. After Owner has terminated Contractor's right to complete the Contract, and if Surety elects to act under paragraph 4.1, 4.2 or 4.3 above, then the responsibilities of Surety to Owner Shall not be greater than those of the Contractor under the Contract, and the responsibilities of Owner to Surety shall not be Greater than those of Owner under the Contract. To a Limit of the amount of this Bond, but subject to commitment by Owner Of the Balance of the Contract Price to mitigation of costs and damages On the Contract, the Surety is obligated without duplication For:
> 6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract.
> 6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4, and

> 6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or nonperformance of Contractor.

*See* Gregerson Aff., Ex 3 (DOC 24-3).

Thus, in addition to the warranty work discussed above, Granite Re is also obligated to pay Chancellor for any additional legal costs and design professional costs that Chancellor incurred as a result of Schenk's default of the Construction Contract. Chancellor incurred additional legal costs in the amount of $11,600 (which continues to increase and accrue herein) as a direct result of Schenk's default of the Construction Contract. *See* McManaman Aff., ¶ 10. Chancellor also incurred additional design professional costs in the amount of $79,362.64 as a direct result of Schenk's default of the Construction Contract. *See* McManaman Aff., ¶ 12. Granite Re has refused to pay Chancellor for those additional design professional costs and legal costs in breach of the Performance Bond. *See* McManaman Aff., ¶¶ 10-13. Additionally, as explained in detail above, Granite Re has also breached its obligation under the Performance Bond to pay Chancellor its liquidated damages. Those liquidated damages total $59,450 (82 days x $725.00 per day). *See* McManaman Aff., ¶¶ 7-8. Finally, if Chancellor is required to complete the warranty work itself, it expects to incur additional damages exceeding $140,000 as a result of Granite Re's breach of the Takeover Agreement, Performance Bond and Construction Contract. Granite Re's material breaches of contract and these factual disputes over the amounts Granite Re owes to Chancellor preclude summary judgment.

### C. *The doctrine of offset defeats summary judgment.*

The foregoing evidence demonstrates that Chancellor's damages and Granite Re's obligations to Chancellor under the Performance Bond and Takeover Agreement far exceed the "earned-but-unpaid balance" that Granite Re claims to be owed under the Takeover Agreement.

South Dakota recognizes that the right of an offset allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the "absurdity of making A pay B when B owes A". *Hoaas v. Griffiths*, 2006 SD 27, ¶ 20, 714 N.W.2d 61, 67.

> The doctrine of setoff, or compensation … is essentially an equitable one requiring that the demands of mutually indebted parties be set off against each other and that only the balance be recovered in a judicial proceeding by one party against the other…. It is a mode that equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay.

*Id.* Under these principles of equity, Chancellor is entitled to reduce the amount it owes to Granite Re under the Takeover Agreement by the amount of damages Chancellor is entitled to receive as a result of Granite Re's breach of the Takeover Agreement, Performance Bond and Construction Contract. Thus, the principles of offset also preclude summary judgment in Granite Re's favor.

In sum, Granite Re's material breaches of the Takeover Agreement, Performance Bond, and Construction Contract, the factual disputes with respect to the amount of Granite Re's outstanding obligations to Chancellor, and the doctrine of offset preclude summary judgment with respect to Granite Re's breach of contract and subrogation claims.

## CONCLUSION

For the foregoing reasons, Granite Re's motion for summary judgment must be denied.

Dated at Sioux Falls, South Dakota, this 12th day of December, 2018.

                                            CADWELL SANFORD DEIBERT & GARRY LLP

                                          By /s/ William C. Garry
                                               William C. Garry
                                               Melissa R. Jelen
                                               200 East 10th St., Suite 200
                                               Sioux Falls SD 57104
                                               (605) 336-0828
                                               bgarry@cadlaw.com
                                               mjelen@cadlaw.com

                                          and

                                          EICH LAW OFFICE
                                          Robin M. Eich
                                          PO Box 310
                                          Parker SD 57053
                                          robin@eichlawoffice.com

                                          Attorneys for Defendant